# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| OMINICKA HILL, | ) | CASE NO. 5:16-cv-2957 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| UNIVERSITY FIDELITY L.P., et al. | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are two motions filed by defendant Universal Fidelity L.P. ("Universal") and two motions filed by plaintiff Ominicka Hill ("Hill"). Following this Court's entry of summary judgment in Universal's favor, Universal filed a motion for sanctions against Hill. (Doc. No. 61 ["Sanctions Mot."].) Hill filed a response (Doc. No. 62 ["Opp'n"]) to Universal's motion for sanctions, and Universal filed a motion to strike that response. (Doc. No. 63 ["Universal's Mot. to Strike"].) In return, Hill filed a motion to strike Universal's motion to strike Hill's response. (Doc. No. 64 ["Hill's Mot. to Strike I"].) Universal responded to Hill's motion to strike I (Doc. No. 65), and then Hill filed another motion to strike that response. (Doc. No. 66 [Hill's Mot. to Strike II"].) For the reasons that follow: Universal's motion for sanctions is DENIED; Universal's motion to strike is DENIED; and both of Hill's motions to strike are DENIED as moot.

## I. BACKGROUND

On December 19, 2016, Hill filed this action pro se[1] against Universal[2] (Doc. No. 1, Complaint ["Compl."].) In her complaint, Hill alleged violations of the Telephone Consumer Protection Act ("TCPA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Ohio Consumer Sales Practices Act ("OCSPA").[3] Specifically, Hill alleges that on June 13, 2014, Universal called Hill without her prior express consent, using an automatic telephone dialing system or an artificial or prerecorded voice. (Compl. ¶¶ 8–10.) This Court granted summary judgment in Universal's favor on May 18, 2018. (Doc. No. 60.) Universal filed its motion for sanctions against Hill on June 21, 2018, Hill filed her reply on July 9, 2018, and the aforementioned motions to strike followed.

## II. UNIVERSAL'S MOTION TO STRIKE AND HILL'S MOTIONS TO STRIKE

Following Hill's response to Universal's motion for sanctions, Universal filed a motion to strike Hill's opposition to its motion for sanctions. (Universal's Mot. to Strike.) In its motion to strike, Universal contends that Hill's response was untimely because it was filed—without leave of Court—outside the fourteen-day response period allowed by L.R. 7.1(d). Universal is correct that Hill's response was filed more than fourteen days after service. However, Universal choose to execute service through email, despite Hill's express wishes that Universal send all correspondences through regular mail. In her response to Universal's notice of failure of ordinary mail service (Doc. No. 57), Hill verified her correct mailing address and explained that she

---

[1] Hill retained counsel in August 2017 (Doc. No. 25), but counsel withdrew in September 2017 (Doc. No. 27), and Hill continued to pursue this action pro se.

[2] Hill originally named Scott Hearn and Terry W. Simonds as defendants as well. However, both were dismissed as defendants pursuant to a stipulation between Hill and Universal. (Docs. No. 36–37.)

[3] On August 17, 2017, Hill voluntarily dismissed her claims under the FDCPA and the OCSPA. (Doc. No. 26.) This

rectified the issue that had made some prior mail undeliverable. Further, Hill expressed the hardship she faced in accessing the Internet because she does not have Internet service at her house and, thus, must travel to the library to check her email.

Despite this notice, Universal certifies that it sent service of its motion for sanctions via email to Hill, and now asks this Court to strike her response to their motion for missing the fourteen-day filing window by three days. The Court considers Hill's response to the notice of failure of ordinary mail service as supplying good cause to excuse her otherwise untimely response.[4] As such,

1. Universal's motion to strike Hill's opposition (Doc. No. 63) is DENIED.

2. Hill's July 30, 2018 motion to strike Universal's motion to strike Hill's opposition (Doc. No. 64) is DENIED as moot.

3. Hill's motion to strike Universal's response to Hill's motion to strike is DENIED as moot.

### III. UNIVERSAL'S MOTION FOR SANCTIONS

In its motion for sanctions, Universal asks this Court to use its inherent authority to impose sanctions against Hill.[5]

---

case proceeded to summary judgment on the TCPA claim alone.

[4] Moreover, if Universal had mailed notice of the motion—as Hill requested—her response would be timely. Pursuant to LR 7.1(d), a party served with a motion under Fed. R. Civ. P. 5(b)(2)(C) (mail) is afforded three additional days to file a responsive pleading. As such, Hill would have had until July 9, 2018, to file her response. Hill did file her response on July 9, 2018, and, thus, would have been a timely response under LR 7.1(d).

[5] Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 are other avenues for district courts to impose sanctions. However, Universal does not ask this Court to impose sanctions using either of those authorities because it does not believe sanctions can be awarded in this case under either Rule 11 or Section 1927. To be sure, a party seeking sanctions under Rule 11 must follow a two-step process: "first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court." *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997). This process, known as the "safe harbor" provision, is an "absolute requirement." *Id.* at 296. There is no suggestion that Universal followed these steps and, thus, sanctions under Rule 11 would be

## A. The Court's Inherent Authority To Impose Sanctions

A district court's inherent authority is an independent basis for sanctioning bad-faith conduct in litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Courts have the "inherent authority to award fees when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (internal quotation marks omitted) (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)). The decision to impose sanctions under its inherent authority rests within the court's discretion, but courts are cautioned that "inherent powers must be exercised with restraint[.]" *Chambers*, 501 U.S. at 48, 50.

In the Sixth Circuit, before awarding sanctions by their inherent authority, most courts hold an evidentiary hearing to determine whether the party acted in bad faith. *See First Bank of Marietta*, 307 F.3d at 516, 518 ("[T]he district court exercised caution in exercising its inherent powers by giving notice of its consideration, conducting a separate hearing and considering post-hearing briefs in determining whether [the plaintiff] acted in bad faith . . . . This is in accord with our precedents."). However, a full evidentiary hearing may not be required before the court imposes sanctions, so long as the court provides the party the opportunity to be heard. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008); *Cook v. Am. S.S. Co.*, 134 F.3d 771,

---

inappropriate.

Further, although the Sixth Circuit has not spoken definitively on the issue, the Sixth Circuit has suggested that a pro se plaintiff cannot be sanctioned under Section 1927. *See Hunter v. Hamilton Cty.*, No. 1:15-cv-540, 2017 WL 35445, at * (S.D. Ohio Jan. 3, 2017) ("The Sixth Circuit has not directly addressed whether sanctions under § 1927 may be imposed on pro se litigants. However, as recognized by one district court within the Sixth Circuit, a recent decision from [the Sixth Circuit] strongly suggests that sanctions under § 1927 are limited to attorneys[.]" (citing *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395–96 & n. 6 (6th Cir. 2009))).

774–75 (6th Cir. 1998) ("It is apparent in this circuit, as well as others, that when imposing sanctions, a full evidentiary hearing is not required."). So long as the potentially sanctioned party had (1) notice that sanctions were a possibility and (2) time to issue a response regarding possible sanctions, the party has been afforded sufficient due process. *See Cook*, 134 F.3d at 775 ("What is required, however, is that before the imposition of sanctions, the [party] must be given notice and an opportunity to be heard." (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S. Ct. 2455, 2464, 65 L. Ed. 2d 488 (1980))). To that end, a party's motion for sanctions is enough notice of the possibility of sanctions to satisfy the potentially sanctioned party's due process rights. *Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011).

Using its inherent authority, a district court can only award attorney's fees to compensate a party for costs incurred because of the opposing party's bad faith—or put another way, a district court can only award sanctions that are related to the opposing party's bad-faith conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017) ("[T]he court can shift only those attorney's fees incurred because of the misconduct at issue."). Thus, to justify awarding compensatory sanctions, the district court must establish a causal link between the litigant's misbehavior and the legal fees paid by the opposing party. *Id.* at 1186–87. The proper test to establish a causal link is a but-for test. "The complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011)). "A sanctioning court must determine which fees were incurred because of, and *solely* because of, the misconduct at issue (however serious, or concurrent with a lawyer's work, it might have been)." *Id.* at 1189 (emphasis added).

Notably, a district court's inherent authority is not limited to sanctioning attorneys only; a district court can sanction a party as well. *Stalley*, 517 F.3d at 920. However, these standards are to be applied with particular strictness when the plaintiff proceeds pro se. *Hughes v. Rowe*, 449 U.S. 5, 15–16, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (per curiam) ("An unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims.").

## B. Hill's Allegedly Bad-Faith Conduct

Universal asks this Court to use its inherent authority to sanction Hill in the amount of $34,442.50 attorney's fees and $252.97 expenses for acting in bad faith. (Sanctions Mot. at 439, 448.[6]) Universal contends that sanctions are appropriate because Hill acted in bad faith when (1) Hill filed and pursued frivolous OCSPA, FDCPA, and TCPA claims; and (2) Hill lied to the Court, relied on unauthenticated, self-created documents, and submitted sham discovery responses to prolong this litigation. The Court will evaluate each claim of bad faith in turn.

### 1. Frivolous Claims

Universal contends that Hill pursued frivolous OCSPA, FDCPA, and TCPA claims. In the Sixth Circuit, to impose sanctions against a party that advanced frivolous claims in bad faith, the district court must find: (1) the claims advanced lacked merit; (2) counsel (or the pro se litigant) knew or should have known this; and (3) the motive for filing the suit was an improper one, like harassment. *See Big Yank Corp.*, 125 F.3d at 313–14 ("[T]he bad faith exception requires that the district court make actual findings of fact that demonstrate that the claims were

---

[6] All page number references are to the page identification number generated by the Court's electronic docketing system.

meritless, that counsel knew or should have known that the claims were meritless, *and* that the claims were pursued for an improper purpose." (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir.1987))).

"[T]he mere fact that an action is without merit does not amount to bad faith." *BDT Prods., Inc. v. Lexmark Intern., Inc.*, 602 F.3d 742, 753 (6th Cir. 2010) (quotation marks omitted) (quoting *Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18, 21 (2d Cir. 1980)). Instead, "the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Id.* Courts have found "something more" to include filing a suit for the purposes of harassment or delay (*Big Yank*), filing a meritless lawsuit and withholding material evidence (*First Bank of Marietta*), fraud or hampering the enforcement of a court order (*Chambers*), or using the courts for other improper purposes. *See Metz*, 655 F.3d at 489 (collecting cases).

### OCSPA and FDCPA Claims

Universal contends that Hill acted in bad faith by pursuing meritless OCSPA and FDCPA claims. At the start of this litigation, Hill was a pro se plaintiff who believed she was advancing meritorious claims. There is no evidence that Hill brought these claims aware that they might be meritless or brought these claims for any improper purpose. Further, Hill did not continue her pursuit of all her claims after she learned the statute of limitations. Instead, Hill dismissed her OCSPA and FDCPA claims after Universal filed its motion to dismiss, expressing that the claims were clearly time-barred.

As made clear by Sixth Circuit case law, the fact that Hill's OCSPA and FDCPA claims lacked merit because they were time-barred is insufficient, by itself, to establish bad faith

warranting sanctions under the Court's inherent authority. Universal has not provided *any* facts or argument to suggest Hill brought her OCSPA and FDCPA claims for an improper purpose. As such, sanctions are not warranted for litigation surrounding Hill's OCSPA and FDCPA claims.

### **TCPA Claim**

Universal also contends that Hill acted in bad faith by continuing the pursuit of her TCPA claim after her counsel withdrew, and points to the fact that Hill's counsel withdrew as evidence that her claims were frivolous. Specifically, Universal points to Hill's counsel's reasons for withdrawal as including significant deterioration of the attorney-client relationship and counsel's belief further representation would violate Ohio Rules of Professional Conduct 3.1 and 3.3(a). (Sanctions Mot. at 441 (citing Doc. No. 27 at 158).)

However, resignation of counsel is not enough to prove that a pro se litigant knew her claims were frivolous and advanced for an improper purpose. In *Rizvi v. Elizabeth Hosp. Med. Ctr.*, No. 4:08CV440, 2009 WL 10688904, at *5 (N.D. Ohio Nov. 9, 2009), the court found that the defendant failed to establish that plaintiff pursued frivolous claims in bad faith, even when multiple attorneys withdrew their representation of plaintiff. In *Rizvi*, the court noted that there was no evidence that plaintiff knew his attorney withdrew because defense counsel threatened to pursue sanctions against the attorney if he continued to represent the plaintiff, nor was there evidence that plaintiff continued the pursuit of his claims pro se despite warnings from counsel about frivolity or vexatiousness. *Id.*

Likewise, here, despite Hill's counsel withdrawing, there is no evidence that Hill's counsel withdrew because sanctions were threatened, that Hill knew of any such threat, or that Hill pursued her remaining TCPA claim after her counsel's withdraw in spite of a threat of

8

sanctions regarding the claim. Moreover, despite Hill's counsel listing Ohio Rules of Professional Conduct 3.1 and 3.3(a) in his motion, there is no evidence that Hill—a pro se litigant—knew what the rule encompasses, looked up that rule, or had that rule explained by her counsel or anyone else.

Although the Court is concerned about some of Hill's conduct in the case, considering her pro se status, the Court finds there is insufficient evidence to establish that Hill pursued her TCPA claim for any improper purpose. And, just as with the OCSPA and FDCPA claims, a meritless TCPA claim alone does not establish bad faith that warrants sanctions under this Court's inherent authority.

### 2. Lies to the Court, Unauthenticated, Self-Created Documents, and Sham Discovery Responses Intended to Prolong Litigation

Universal also contends that Hill lied to this Court, relied on unauthenticated, self-created documents, and produced sham discovery responses that were intended to prolong litigation.

### Prolonging Litigation

To begin, Universal has failed to provide facts sufficient to support a finding by this Court that Hill prolonged litigation for an improper purpose. Courts may issue sanctions against a party that delays or prolongs litigation by willfully refusing to comply with court orders. *Chambers*, 501 U.S. at 45. However, there is no evidence, either presented by Universal or in the record, that Hill willfully ignored any of the Court's orders or prolonged this litigation for an improper purpose.

This Court acknowledges that Hill did not timely coordinate with Universal on some occasions, but Hill responded to the magistrate judge's show cause order, participated in all calls with the Court, and participated in settlement negotiations with Universal. Further, the course of

this litigation progressed in a timely manner and the entire action was resolved within seventeen months, with briefing resolved in fourteen months. There is no evidence to establish that Hill delayed the course of this litigation for an improper purpose, or to any extent that would warrant this Court using its inherent authority to issue sanctions.

### **Lies and Unauthenticated Documents**

More seriously, Universal contends that Hill lied in her opposition to Universal's motion for summary judgment. Sanctions may be appropriate when a party lies to the Court. *Chambers*, 501 U.S. at 42. Universal points to various assertions in Hill's opposition and to evidence Universal claims proves Hill's assertions are false. Further, Universal points to the magistrate judge's report and recommendation in which the magistrate judge found, "Hill's belated interrogatory responses to be evasive or disingenuous and possibly untruthful." (Sanctions Mot. at 443–44 (citing Doc. No. 58 and 429).)

Although the magistrate judge thought some of Hill's statements in her opposition *might* have been untruthful, the magistrate judge did not make an explicit finding that Hill lied. Giving Hill the benefit of the doubt, and conceding this is a close call, this Court finds that there is not a sufficient basis to determine whether Hill lied, and more importantly, whether she lied for an improper purpose, such as would require sanctions.

In her opposition to Universal's motion for sanctions, Hill provides explanations for the at-issue assertions. For example, Universal contends that Hill lied by denying "owning The Fabulous Lashes, LLC[.]" (Sanctions Mot. at 442 (citing Doc. No. 53-1 at 332).) As an explanation, Hill provides that because The Fabulous Lashes, LLC is defunct, she does not consider herself the "owner." (Opp'n at 465.) Another example accuses Hill of producing

10

unauthenticated call records, suggesting they were fabricated. (Sanctions Mot. at 442.) In response, Hill seems to think the "call records" were authenticated because they came from her cell phone provider. (Opp'n at 465.) Again, while Hill's assertions might be disingenuous, and the untimely documents were perhaps suspect, the Court, using its discretion, and given Hill's pro se status, does not find it appropriate to sanction Hill for what might be technical and procedural misunderstandings.

Further, even if the Court did determine that Hill's opposition contained lies, compensatory sanctions are not warranted for actions that a party would have taken even if the plaintiff had not acted in bad faith. *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186–87. Universal is only entitled to compensatory sanctions under the Court's inherent authority for costs Universal would not have incurred but for Hill's alleged lies. Here, the only costs Universal incurred after Hill's opposition were for writing the reply to Hill's opposition. However, Hill's opposition contained more assertions than the assertions that Universal claims are lies and, thus, the Court finds that Universal would have filed a reply notwithstanding plaintiff's alleged bad faith. To be sure, Universal does not suggest they would have skipped a reply brief but for Hill's assertions. Thus, even if the Court determined Hill lied in her opposition for an improper purpose, Universal would not be entitled to any compensatory sanctions under the Court's inherent authority.

## IV. CONCLUSION

For these reasons, Universal's motion for sanctions (Doc. No. 61) is DENIED; Universal's motion to strike (Doc. No. 63) is DENIED; Hill's motion to strike Universal's

motion to strike (Doc No. 64), and Hill's motion to strike Universal's response to her motion to strike (Doc. No. 66) are both DENIED as moot.

**IT IS SO ORDERED**.

Dated: March 14, 2019

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**